# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (Dayton)

| | |
|---|---|
| AKEYINDE BOYD<br>8217 Mt. Caramel St.<br>Huber Heights, OH 45424 | CASE NO. 1: 21 cv 397<br><br>JUDGE: Timothy Black |
| -and- | |
| SATONYA BOYD<br>8127 Mt. Caramel St.<br>Huber Heights, OH 45424 | |
| Plaintiffs, | |
| v. | |
| CLOPAY CORP.<br>1400 W. Market St.<br>Troy, OH 45373 | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| **Serve Also:**<br>CLOPAY CORP.<br>c/o Corp. Service Co. (Stat. Agent)<br>50 W. Broad St., Suite 1330<br>Columbus, OH 43215 | **JURY DEMAND ENDORSED HEREIN** |
| CLOPAY CORP.<br>8585 Duke Blvd.<br>Mason, OH 45040 | |
| Defendant. | |

Plaintiffs AKEYINDE BOYD and SATONYA BOYD (collectively the "Boyds") by and through undersigned counsel, as their Complaint against the Defendant, state and aver the following:

## PARTIES

1. The Boyds are residents of the city of Huber Heights, Montgomery County, state of Ohio.

2. Defendant CLOPAY CORP. ("Clopay") is a foreign-incorporated, for profit company that conducts business throughout the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 1400 W. Market St., Troy, OH 45373.

3. Clopay is, and was at all times hereinafter mentioned, the Boyds' employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C § 2000(e) and R.C. § 4112.01(A)(2).

**JURISDICTION & VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that the Boyds are alleging federal law claims under Title VII.

5. This Court has supplemental jurisdiction over the Boyds' state law claims pursuant to 28 U.S.C. § 1367, as the Boyds' state law claims are so closely related to their federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. § 1391.

7. Within 300 days of the conduct alleged below, the Boyds filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2020-01503 and Charge No. 473-2020-01501) against Clopay ("EEOC Charge[s]").

8. On or about March 29, 2021, the EEOC issued and mailed Dismissal and Notice of Rights letters to the Boyds regarding the EEOC Charges.

9. The Boyds received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which have been attached hereto as Plaintiff's Exhibits 1 and 2.

10. The Boyds have filed this Complaint on or before the 90-day deadline set forth in their Dismissals and Notices of Rights.

11. The Boyds have properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

12. The Boyds are married to each other.

13. The Boyds are former employees of Clopay.

14. At all times noted herein, the Boyds were qualified for their positions with Clopay.

15. At all times noted herein, the Boyds could fully perform the essential functions of their jobs, with or without reasonable accommodations.

16. Akeyinde Boyd is African American, placing him in a protected class for his race.

17. Satonya Boyd is mixed-race (African American and Hispanic) and a female/woman, placing her in protected classes for her race and sex/gender.

18. On or about May 21, 2018, Akeyinde Boyd began working for Clopay as an AM Weekend Roll Form & Press Coordinator and Satonya Boyd began working as an assembler.

19. Clopay terminated both Plaintiffs' employment on or about January 31, 2020.

20. Throughout their employment, the Boyds dealt with both implicit and explicit racism at Clopay.

21. As a list of non-exhaustive examples:

    a. Numerous employees consistently wore Confederate flag memorabilia;

    b. Several Caucasian employees used the n-word on a near-weekly basis, both in the context of song lyrics and outside that context;

    c. Clopay used antiquated terminology for its products (e.g. the "master" and "slave" glue machines, and "plantation" style garage doors, despite the doors' actual name being "lever doors");

    d. Numerous employees had swastika tattoos and memorabilia; and

    e. They were treated disparately worse because of their skin tone compared to their Caucasian colleagues.

22. On multiple occasions throughout their employment, the Boyds reported this racism to Clopay, but never saw any remedial action taken. These were each protected complaints of discrimination.

23. Clopay's weekend supervisor and Akeyinde Boyd's boss, Steve Leistrowitz (("Leistrowitz") (Caucasian)) often told stories about how he really liked the Ku Klux Klan when he was living in South Carolina.

24. Leistrowitz told Akeyinde Boyd about how he used to frequent a strip club until he saw an African American dancer, which disgusted him to the point that he left.

25. Leistrowitz also told Akeyinde Boyd about a Klu Klux Klan rally he had called off work to join. This resulted in multiple conversations and "jokes" about it amongst Clopay's employees.

26. Akeyinde Boyd experienced other examples of direct racism while employed with Clopay.

27. Chad (LNU, 2nd shift EPS) had a problem working with non-Caucasian employees and commented that he did not like the attitude that he ascribed to all African Americans when speaking to another employee, Ben Crowley (("Crowley") (Caucasian)).

28. An argument ensued between them, and Chad stated that "if [he] wanted to deal with all this attitude, [he] would've stayed down there with that nigger."

29. Upon information and belief, Crowley had reported the instances, but no disciplinary action was taken by Clopay for the heinous slur.

30. Satonya Boyd has had problems with low self-esteem throughout her life.

31. In an effort to help gain some confidence, Satonya Boyd made the decision to have breast enhancement surgery. She also posted her desire to have the surgery on her Facebook page.

32. On or about January 13, 2020, Akeyinde Boyd bought Satonya Boyd a cup of coffee at work. Samantha Rite (("Rite") (assembler, Caucasian)) approached them, told Akeyinde Boyd to stop buying Satonya Boyd coffee and instead to "buy her some boobs." The Boyds thought this comment was funny.

33. Later, Rite returned with a hand-drawn sign of breasts entitled "Tits-4-Toni" and posted it on the wall at Clopay (hereinafter referred to as "the sign").

34. Satonya Boyd is often commonly referred to as "Toni."

35. At the end of the workday, Satonya Boyd told Akeyinde Boyd that numerous employees had taken pictures with the sign.

36. Later that evening, employees posted their pictures of the sign on their individual Facebook pages. Satonya Boyd had shared the picture as well, but made a conscious effort to scrub any Clopay signs or symbols off of her page before posting the picture.

37. Akeyinde Boyd shared Satonya Boyd's post of the sign.

38. By the end of that day, the post of the sign had been shared by additional employees and supervisor personnel.

39. The following week, a few coordinators ("the coordinators") asked the Boyds to take down the post of the sign.

40. The coordinators then told the Boyds that they were expected to be fired for the post.

41. On or about January 10, 2020, the Boyds, along with several other coordinators, were called into a meeting to recount what had happened with the Facebook posts about the sign.

42. In the meeting, Clopay implied that Akeyinde Boyd had made the sign, when he did not, and that he tried to encourage numerous employees to take pictures with the sign, which he also did not.

43. Satonya Boyd was suspended on that same day while Akeyinde Boyd returned to work.

44. On or about January 31, 2020, Akeyinde Boyd was called back into a meeting and was told by Matthew Newcomber ((Clopay's HR Manager) (Caucasian) ("Newcomber")) that his employment was terminated for policy violations and "breach of [the company's] trust."

45. Newcomber further told Akeyinde Boyd that Satonya Boyd was terminated as well and that Akeyinde Boyd was to deliver the news to her.

46. Following the meeting, Akeyinde spoke to another coordinator about the sign shared on Facebook, who expressed that the Boyds were the only ones fired for the Facebook posts.

47. The Caucasian employees who had shared the post of the sign and/or posted their own pictures were given a choice between four options for reprimands (a demotion, a two-day suspension, an S1 safety project, or to speak at a leadership program).

48. This was clearly disparate discipline for the Boyds.

49. Additionally, Satonya Boyd faced issues with sexual harassment beginning on her very first day of her employment.

50. A coworker, Jeff Anderson ((EPS stack off) (Caucasian)), had approached Akeyinde Boyd and told him "not to take it personally" but that "lots of the guys" were talking about "how sexy" Satonya Boyd was. Anderson was not aware that the Boyds were married.

51. One day, Satonya Boyd was approached by a coworker, Dan ("Dan") (LNU, Caucasian, intellicore department) from behind who began rubbing her shoulders.

52. Satonya Boyd immediately told this individual to not touch her, and neither consented to nor appreciated the unwanted physical touching

53. Satonya Boyd faced ridicule from her coworkers as a result of this sexual harassment.

54. Satonya Boyd reported Dan's conduct to her coordinator but received no help and the ridicule from her colleagues only worsened.  She stayed away from Dan going forward.

55. Upon information and belief, Dan never received any sort of discipline for his actions.

56. Satonya Boyd experienced other instances of sexual harassment at Clopay.

57. Satonya Boyd was also directly sexually harassed by another employee ("coworker")

58. Over the span of weeks, Satonya Boyd's coworker repeatedly approached her and came on to her.

59. Satonya Boyd repeatedly rejected her coworker's advancements, but her coworker did not stop.

60. Upon information and belief, her coworker never received any disciplinary action by Clopay.

61. Despite repeated reports of additional unwelcomed sexual harassment, Clopay never took any remedial action.

62. Clopay's termination of the Boyds' employment was an adverse employment action against them.

63. Satonya Boyd was discriminated against and sexually harassed due to her sex/gender, and due to her opposition to her coworker's advances.

64. Clopay's purported reason(s) for the Boyds' employment termination was pretextual.

65. The Boyds were retaliated against for making complaints of discrimination and sexual harassment in the workplace.

66. Clopay actually terminated the Boyd's employment discriminatorily against their race and/or in retaliation against their protected complaints.

67. Satonya Boyd was sexually harassed due to her sex/gender.

68. There was a causal connection between the Boyds' protected classes and complaints, and Clopay's adverse against taken against the Boyds.

69. As a result of the above, the Boyds have suffered damages, including economic damages, as well as severe emotional distress, anxiety, and depression.

**COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.***

70. The Boyds restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Akeyinde Boyd and Satonya Boyd are African American and mixed-race respectively, and thus are in a protected class for their races.

72. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

73. Clopay treated the Boyds differently than other similarly situated employees based upon their races.

74. Clopay's termination of the Boyds' employment were adverse employment actions against them.

75. Clopay's purported reason(s) for the Boyds' employment termination was pretextual.

76. Clopay actually terminated the Boyds' employment due to their races.

77. Clopay violated R.C. § 4112 *et seq.* by terminating the Boyds' employment because of their races.

78. Clopay violated R.C. § 4112.02 by treating the Boyds' differently from other similarly situated employees outside their protected class.

79. Clopay violated R.C. § 4112.02 by applying their employment policies in a disparate manner based on the Boyds' races.

80. Clopay violated R.C. § 4112.02 by applying their disciplinary policies in a disparate manner based on the Boyds' races.

81. The Boyds incurred emotional distress damages as a result of Clopay' conduct described herein.

82. As a direct and proximate result of Clopay's acts and omissions, the Boyds have suffered and will continue to suffer damages.

**COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII**

83. The Boyds restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

84. The Boyds are African-American and mixed-race respectively, and thus are in protected classes for their races.

85. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

86. Clopay treated the Boyds differently than other similarly situated employees based upon their races.

87. Clopay's termination of the Boyds' employment was an adverse employment action against them.

88. Clopay's purported reason for the Boyds' employment termination was pretextual.

89. Clopay actually terminated the Boyds' employment due to their races.

90. Clopay violated Title VII by terminating the Boyds' employment because of their races.

91. Clopay violated Title VII by treating the Boyds differently from other similarly situated employees outside their protected class.

92. Clopay violated Title VII by applying its employment policies in a disparate manner based on the Boyds' races.

93. Clopay violated Title VII by applying its disciplinary policies in a disparate manner based on the Boyds' races.

94. The Boyds incurred emotional distress damages as a result of Clopay's conduct described herein.

95. As a direct and proximate result of Clopay's acts and omissions, the Boyds have suffered and will continue to suffer damages.

## COUNT III: SEXUAL HARASSMENT
### (Plaintiff Satonya Boyd Only)

96. Satonya Boyd restates each and every paragraph of this Complaint as though it were fully restated herein.

97. Satonya Boyd was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

98. Clopay created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

99. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Clopay, Satonya Boyd reported the sexual harassment to Clopay.

100. Clopay's' actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. §4112.02(A).

101. Dan's sexual harassment of Satonya Boyd occurred while Dan was acting in the course and scope of his employment at Clopay.

102. Clopay failed to take any corrective or remedial action.

103. As a direct and proximate result of Clopay's conduct, Satonya Boyd has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT IV: GENDER/SEX DISCRIMINATION IN VIOLATION OF R.C. § 4112 *et seq.*
(Plaintiff Satonya Boyd Only)**

104. Satonya Boyd restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. Satonya Boyd is a member of a statutorily protected class based on her gender/sex under R.C. § 4112 *et seq*.

106. Clopay treated Satonya Boyd differently than other similarly situated employees based on her gender/sex.

107. Clopay discriminated against Satonya Boyd on the basis of her gender/sex throughout her employment with the company.

108. Clopay' discrimination against Satonya Boyd based on her gender/sex violates R.C. § 4112 *et seq*.

109. As a direct and proximate result of Clopay' conduct, Satonya Boyd suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: GENDER/SEX DISCRIMINATION IN VIOLATION OF TITLE VII
### (Plaintiff Satonya Boyd Only)

110. Satonya Boyd restates each and every prior paragraph of this Complaint, as if it were fully restate herein.

111. Satonya Boyd is a member of a statutorily protected class based on her sex/gender under Title VII.

112. Clopay's treated Satonya Boyd differently than other similarly situated employees based on her sex/gender.

113. Clopay's discrimination against Satonya Boyd on the basis of her sex/gender throughout the end of her employment with the company.

114. Clopay terminated Satonya Boyd's employment.

115. Clopay's termination of Satonya Boyd's employment was an adverse employment action against her.

116. Clopay's cited reason(s) (or lack thereof) for Satonya Boyd's employment termination are pretextual.

117. Clopay actually terminated Satonya Boyd because of her sex/gender.

118. Clopay violated Title VII when it terminated Satonya Boyd's employment based on her sex/gender.

119. Clopay's discrimination against Satonya Boyd based on her sex/gender violates Title VII.

120. As a direct and proximate result of Clopay's conduct, Satonya Boyd suffered and will continue to suffer damages.

## COUNT VI: RETALIATION

121. The Boyds restate each and every prior paragraph of this complaint, as if it were fully restated herein.

122. As a result of the Clopay's discriminatory conduct described above, the Boyds complained of the discrimination, sexual harassment, and disparate treatment they were experiencing.

123. Following the Boyds' complaints to coordinators about sexual harassment, ridicule, and disparate treatment toward them, Clopay took adverse employment actions against the Boyds, including, but not limited to, terminating their employment.

124. Clopay's actions were retaliatory in nature based on the Boyds' opposition to the unlawful discriminatory conduct.

125. Pursuant to R.C. § 4112 *et seq.* and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

126. As a direct and proximate result of Clopay's retaliatory discrimination against and discharge of the Boyds, they have suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, the Boyds demands from Clopay the following:

a) Issue a permanent injunction:

    i. Requiring Clopay to abolish discrimination, harassment, and retaliation;

    ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Clopay to expunge their personnel files of all negative documentation;

c) An award against each Clopay for compensatory and monetary damages to compensate the Boyds for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Clopay in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for the Boyds' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

                                    Respectfully submitted,

/s/ Matthew Bruce
Matthew G. Bruce (0083769)
Trial Attorney
Brianna Carden (0097961)
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiffs Akeyinde and Satonya Boyd*

## **JURY DEMAND**

Plaintiffs demand a trial by jury by the maximum number of jurors permitted.

                                                      /s/ Matthew Bruce
                                                Matthew G. Bruce (0083769)